IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **BILLY JOHNSON,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-02948 |
| | § | |
| **SAN JACINTO COLLEGE** | § | |
| | § | |
| Defendant | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Billy Johnson ("Plaintiff" or "Mr. Johnson"), files this lawsuit against San Jacinto College ("Defendant/ "College"), and in support thereof, states and alleges as follows:

### I.   NATURE OF ACTION

1. This is an action under the Americans with Disabilities Act ("ADA"), including the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq.*, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as amended, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 (ADEA).  The purpose of the action is to correct unlawful employment practices on the basis of age and disability and to make Plaintiff whole for lost pay, damages, fees, costs, and expenses because of the age discrimination, disability discrimination, and retaliation he suffered.

### II. PARTIES

2. Plaintiff, Billy Johnson, is an individual and citizen of the United States, residing in Edna, Texas.

3. Defendant San Jacinto College is a Not-For-Profit Community College located in Pasadena, Harris County Texas. Defendant is a recipient of Federal financial assistance thus subjecting it to the requirements of § 504 of the Rehabilitation Act of 1973. It may be served through its counsel Christopher Gilbert, Thompson & Horton LLP, 3200 Southwest Freeway, Suite 2000, Houston, Texas 77027, 713-554-6741.

### III.   JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) as this action arises ADA, including the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq.*, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as amended, and the ADEA.

5. Venue is proper in this district under 28 U.S.C. § 1391(b) as the Defendant resides and conducts business in this judicial district, and the employment practices alleged to be unlawful giving rise to this action were committed within the jurisdiction of the United States District Court for the Southern District of Texas, Houston Division.

### IV.   PROCEDURAL REQUISITES

6. All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was jointly filed with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWC-CRD") and the Plaintiff's lawsuit was filed within ninety days of receipt of the EEOC's issuance of a right to sue letter.

### V.   STATEMENT OF FACTS

7. Mr. Johnson, who is 73 years old, began working for Defendant in December 2006. In August 2016, Mr. Johnson was injured on the job when he fell off a forklift. He sought

medical attention and subsequently filed a workers' compensation claim against Defendant shortly after the injury occurred. Following his injury, it became clear that Defendant had no interest in employing him anymore; not only because he had filed a workers' compensation claim but also because of his age and disability. Defendant forced him to retire in June 2018, against his own protests.

8. Following his August 2016 injury, Mr. Johnson struggled to work with the College with regard to an accommodation. His doctor had assigned him light duty work, which he believes was available at the time, and ordered him not to drive.

9. Despite those restrictions, in or around June of 2017, the College forced Mr. Johnson to come back to work yet refused to assign him to his original position and refused to allow him to work at their North campus, where Mr. Johnson had been working before his injuries. Mr. Johnson asked for an accommodation of additional time off to finish his therapy in Edna, Texas, but the College refused, without any interactive process. Mr. Johnson's request for additional time off was also refused despite the College's practice of allowing other employees additional time off as an accommodation.

10. Mr. Johnson was also going to physical therapy near the college's North campus. Because of the move to another campus, Mr. Johnson was forced to drive 700 miles a week, against his doctor's orders. Because of his injuries and restrictions, the College refused to return Mr. Johnson to his previous office, despite the fact that he was able to perform all of the essential functions of his previous job with or without reasonable accommodation.

11. In the time following his injury, numerous people told Mr. Johnson to retire and/or asked him "when he was going to retire." Mr. Johnson's supervisor, Ron Andall, Director, Facilities Operations, asked Mr. Johnson several times when he was going to retire and told

him that he wanted him to retire so that he could move his friend into Mr. Johnson's position. Mr. Johnson was specifically told, "we've got a younger guy we want to put in the office."

12. Mr. Johnson was also told, "we found a younger guy that can do your job," by John Maslonka, Mr. Johnson's former supervisor, who also asked him multiple times when he was going to retire. Gay Kendrick, Manager-Maintenance, also asked Mr. Johnson when he was going to retire, and Mr. Johnson's co-workers also got into the act – constantly asking him when he was going to retire. Mr. Johnson vehemently protested these urgings to retire and made it very clear that he had no plans to retire for another seven years.

13. Subsequently, after he was forced to retire, Mr. Andall got what he wanted and Mr. Johnson was replaced by Mike Marchuk, who he believes was 49 years old at the time he replaced Mr. Johnson.

14. Not only did several of Mr. Johnson's supervisors tell him flat out to retire, but when he refused, Mr. Johnson was transferred to a vacant building where he was forced to work alone with no computer and no phone. It is his understanding that Defendant had plans to tear down the building where he was sent to work at the time. The building was roach infested, covered in trash, vacant, had no panic button and no fire extinguisher. Mr. Johnson complained multiple times, but he was forced to work in that building up until the day he was forced to retire. In fact, it is our understanding that Jeff Chapatti, Maintenance Grounds Supervisor told Thaddeus King, Groundskeeper, not to go over to the building or to do anything involving maintenance to the building, while Mr. Johnson was working there.

15. Eventually, Mr. Johnson's supervisors notified Ginger Lambert, Director at the College, that they could no longer accommodate him. Ms. Lambert then met with John Maslonka and Gaynell Kendrick to discuss whether Mr. Johnson could continue working at the

College or not. In 2018 Ms. Lambert then told Mr. Johnson he would have to retire, or he would be fired.

16. Mr. Johnson complained to multiple people, multiple times, about the discrimination, but no one did anything about it at all. When Mr. Johnson complained about the building and the harassment to Bryan Jones, Assoc. VC, Facilities Services and William Dickerson, Director of Accounting and Financial Services, they both told him they "didn't want to get involved!" Mr. Johnson also complained to Vicki Del Bello, Director of Employee Relations and Benefits. He had four meetings with Ms. Del Bello wherein he complained that he was being retaliated against and being asked to retire. She made it clear to him that she did not want to get involved with his complaints. Mr. Johnson also met with Wesley Morris, Manager, Facilities Support Services about the retaliation and harassment. Mr. Morris did nothing. Mr. Johnson also complained to Teri Zamora, Vice Chancellor Fiscal Affairs, but she too did nothing about his complaints, although Mr. Johnson specifically told Ms. Zamora, "I am being forced into retirement!" Mr. Johnson also complained to his supervisors John Maslonka and Gaynell Kendrick about the disgusting building he was forced to work in. Mr. Maslonka simply responded that if he didn't like the building then he could "go back to working Central," knowing that his injuries would not let him drive that long distance.

17. Defendant harassed Mr. Johnson based on his age and injuries and forced him to retire for the same reason. The very fact that he was replaced by an employee nearly twenty years younger solidifies Mr. Johnson's claims for age discrimination.

18. On June 1, 2018, Ginger Lambert, Director at the College informed Mr. Johnson that he "had to retire or he would lose all of his benefits." She then tried to get him to complete an

Exit Questionnaire which he refused to complete because the questionnaire was titled "voluntary separation only," and Mr. Johnson remained adamant that he was not retiring. It is believed that because Mr. Johnson hired a worker's compensation attorney and because of his age and disabilities, he was subsequently bullied about retiring and ultimately forced to retire.

19. Ms. Lambert claimed that Mr. Johnson "could not do the job." However, this was not true. The only restriction Mr. Johnson had at the time was that he could not drive long distances. His job did not always entail driving long distances so there was no reason for Defendant to refuse this accommodation. Further, there are numerous examples of employees being allowed to stay on the job or being accommodated with light duty work who are younger than Mr. Johnson. Therefore, Defendant's claim that it could not accommodate Mr. Johnson is merely a pretext for discrimination based on age, disability, and retaliation for his filing a worker's compensation attorney to handle his matter.

## VI.   AGE DISCRIMINATION

20. The allegations contained in all paragraphs of the complaint are hereby incorporated by reference with the same force and effect as if set forth verbatim.

21. The ADEA protect persons forty years of age and older against discriminatory employment practices based on age. Pursuant the ADEA Plaintiff pleads a cause of action against the Defendant for age discrimination.

22. The Defendant engaged in discrimination and harassment against Plaintiff, an individual over forty years of age, and ultimately forced him to retire based upon his age. Plaintiff further asserts on knowledge and belief that his former position was filled by someone younger than him. The effect of these practices has been to deprive Plaintiff of equal

employment opportunities and otherwise affected his status as an employee. Plaintiff has suffered damages due to Defendant's violations of the ADEA.

## VII. DISABILITY DISCRIMINATION

23. The allegations contained in all paragraphs of the complaint are hereby incorporated by reference with the same force and effect as if set forth verbatim.

24. At all relevant times, Mr. Johnson is/was an individual with a physical disability (actual, record of, and/or regarded as) as defined by the ADA, , 42 U.S.C. § 12102(2)(A) and, as defined by the Rehabilitation Act of 1973, 29 U.S.C. §§ 705(9)(B) and (20)(B).

25. Due to his injuries sustained during the workplace accident, he was substantially limited and significantly restricted in major life activities, including but not limited to, climbing, driving long distances, walking long distances, and lifting heavy loads. By virtue of his experience, knowledge, skills, training, and ability, Mr. Johnson was qualified to perform and satisfactorily performed his position of Maintenance Coordinator with or without reasonable accommodation. Nonetheless, the College refused to return Mr. Johnson to his original position unless he was 100% recovered.

26. The College failed to provide Mr. Johnson with a reasonable accommodation and also discriminated against Mr. Johnson because of his disabilities. He was not allowed to take additional time off when he needed it, he was refused additional sick time from the College's sick back (though this is a routine accommodation that the College grants), and he was not allowed to work at the campus location closest to his home for several months.

27. It was only after several months of complaints that Mr. Johnson was finally transferred back to the College's North Campus. Yet, when he was transferred back, he was placed in an abandoned building, forced to work alone. When he asked to be moved from the

building, because of health concerns (as advised by his doctor), the College refused to accommodate him.

28. The discrimination was intentional.

### VIII. RETALIATION

29. The allegations contained in all paragraphs of the complaint are hereby incorporated by reference with the same force and effect as if set forth verbatim.

30. Section 504 of the Rehabilitation Act prohibits anyone from interfering with the exercise of rights granted by the law to individuals with disabilities. Section 504 incorporates the anti-retaliation provision of Title VI of the Civil Rights Act of 1964, which "prohibits recipients from intimidating, threatening, coercing, or discriminating against any individual for the purpose of interfering with any right or privilege . . . or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part." 34 C.F.R. §104.61 and 34 C.F.R. §100.7(e). Similarly, the ADA protects any individual who has opposed any act or practice made unlawful by the ADA. 42 U.S.C. § 12203(a), and the ADEA prohibits retaliation for opposing or complaining of age discrimination.

31. Pursuant to the ADA, the Rehabilitation Act, and the ADEA, Plaintiff pleads a cause of action against the Defendant for retaliation.

32. Plaintiff engaged in a protected activity by complaining to multiple supervisors that the questions about when he would retire and the persistent suggestions and requests that he retire were discriminatory actions. Plaintiff also engaged in protected activity when he asked repeatedly for a reasonable accommodation in allowing him to return to return to his original office and job rather than being forced to drive to a location that required him to drive long

distances. In response to his complaints Plaintiff was subjected to a hostile workplace by being placed to work in an inhospitable and unsafe building. Ultimately Plaintiff was forced to retire following his complaints about age discrimination and the failure to accommodate his disability. Plaintiff also asked to be moved from an unhealthy building into a safer office. Defendant refused to move him. The effect of these practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affected his status as an employee.

Plaintiff alleges that the Defendant retaliated against him in violation of the ADA, the Rehabilitation Act, and the ADEA.

## IX.   DAMAGES

Plaintiff sustained damages as a result of the actions and/or omissions of Defendant described herein. Accordingly, Plaintiff is entitled to an award of actual and compensatory damages, punitive damages, liquidated damages, lost wages and benefits in the past and future, in an amount within the jurisdictional limits of the court. Plaintiff also seeks an award of damages for his mental anguish and pain and suffering he has suffered, continues to suffer, and will suffer in the future. Plaintiff further seeks costs, interest and attorney's fees.

Plaintiff seeks monetary relief of over $200,000.00 but not more than $5,000,000.00, unless a jury finds that this amount is not sufficient to compensate Plaintiff and deter Defendant from such acts in the future.

## X.   JURY DEMAND

Plaintiff demands a jury on all issues to be tried in this matter and herein submits the jury fee.

## XI.   PRAYER

For the reasons set forth above, Plaintiff, Billy Johnson respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court and such other and further relief to which the Plaintiff may be entitled at law or in equity.

RESPECTFULLY SUBMITTED

*/s/ Amanda C. Hernandez*
Amanda C. Hernandez
State Bar No. 24064411
5100 Westheimer, Suite 200
Houston, TX 77056
Tel: 713-588-4359
Email: amanda@ahfirm.com